## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC,** | |
| **Plaintiff,** | **Case No. 17-cv-20782-DPG** <br> **Case No. 20-cv-24140-DPG** |
| **v.** | **CLASS ACTION COMPLAINT** |
| **ALLSTATE INSURANCE COMPANY,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

## PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES[1]

Plaintiff, MSP Recovery Claims, Series LLC ("MSPRC"), on behalf of itself and all others similarly situated (the "Class Members"), brings this action against Allstate Insurance Company ("Defendant" or "Allstate"), and alleges:

## INTRODUCTION

1. Defendant has systematically and uniformly failed to honor its primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "MSP Act"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendant but, instead, were paid by Medicare Advantage Plans ("MA Plans"), which include Medicare Advantage Organizations ("MAOs"), as well as first tier and downstream entities

---

[1] As noted in the parties' Agreed Motion to Consolidate Actions and For Leave to File a Consolidated Amended Complaint (ECF No. 31), this consolidated complaint asserts MSP Act claims based on liability from third-party policies.

such as Management Service Organizations ("MSOs") and Independent Physician Associations ("IPAs"). Specifically, Defendant has failed to reimburse Plaintiff and the Class Members for accident-related medical expenses upon entering into settlements with Medicare beneficiaries enrolled in MA Plans. As a result, the cost of those accident-related medical expenses has been borne by MA Plans to the detriment of the Medicare Trust Funds and the public. Because Defendant is a primary payer under the MSP Act, Plaintiff and the Class are entitled to be reimbursed at industry standard rates by Allstate.

2.      Defendant is an auto or other liability insurer that provides liability insurance on behalf of its insureds. In the case of automobile and other accidents involving Defendant's insureds and Medicare beneficiaries enrolled in MA Plans under Part C of the Medicare Act ("Enrollees"), where Defendant's insureds are liable and Enrollees are injured and enter into settlements with Defendant as liability insurers, Defendant is considered a primary plan under the MSP Act. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include an automobile or liability insurance policy or plan (including a self-insured plan)); 42 C.F.R. § 411.21 (same). Accordingly, Defendant's obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to the MA Plan's obligation to pay for those same accident-related medical expenses, which is secondary. Defendant has systematically failed to make or reimburse these payments or both, passing on those expenses to MA Plans.

3.      Plaintiff's assignors are MA Plans that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MA Plans provide such services pursuant to contracts with the Centers for Medicare & Medicaid Services ("CMS") in which CMS pays the MA Plans a fixed fee per enrollee and the MA Plans provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MA Plans stand in the

same footing as traditional Medicare, including under the MSP Act, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from rightful primary payers if they pay for services that fell within overlapping insurance maintained by Enrollees with a primary payer.

4.      The overriding purpose of the MSP Act is to ensure that Medicare and MA Plans do not pay for medical expenses on behalf of Medicare beneficiaries that should be paid instead by primary payers such as Defendant.[2] Without the provisions in the MSP Act establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Therefore, Medicare and MA Plans, which are otherwise required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.      In addition to their obligation to pay for, and/or reimburse Medicare and MA Plans, accident-related medical expenses on behalf of their Enrollees, primary payers like Defendant have an affirmative burden, under applicable federal regulations promulgated under the MSP Act, to: (i) identify whether individuals with whom they enter into settlements are Medicare beneficiaries; and (ii) report their primary payer responsibility to CMS.

6.      Even in the face of the MSP Act's clear legal requirement that primary payers like Defendant pay for accident-related medical expenses, take steps to identify whether individuals with which they enter into settlements are Medicare beneficiaries, and report their primary payer

---

[2] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

responsibility to CMS,[3] they rarely honor their obligations to MA Plans and, instead, willfully and knowingly do nothing to ensure that the burden for those accident-related medical expenses is borne by the MA Plans.

7.     In large part, Defendant's deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Act has been successful in its primary objective—to pass on accident-related medical expenses to MA Plans, including Plaintiff's assignors and the Class Members, and consequently, the Medicare Fund.

8.     To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Act and remedy a primary payer's failure to reimburse conditional payments made by Medicare or MA Plans, and provided for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations to MA Plans under the MSP Act.

9.     Plaintiff utilizes a proprietary system that matches the health care claims data from their assignors to the publicly available reporting data from CMS, Insurance Services Office ("ISO"), police crash and incident reports available in limited jurisdictions, and claims data made available by primary payers like Defendant, either voluntarily through a coordination of benefits process that primary payers ordinarily stonewall or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendant fail to honor their obligations under the MSP Act.

10.     As described in detail below, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and

---

[3] *Id.*

reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of

the MSP Act and Medicare, because when MA Plans recover conditional payments, they "spend

less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost

savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir.

2012).

<u>**PARTIES, JURISDICTION AND VENUE**</u>

11.     MSP Recovery Claims, Series LLC is a Delaware series limited liability company

with a principal place of business located at 2701 S. Le Jeune Road, 10th Floor, Coral Gables,

Florida 33134. MSPRC's Second Amendment of Limited Liability Company Agreement ("LLC

Agreement") provides for the establishment of one or more designated Series. All records of all

Series are maintained together with all assets of MSPRC. All designated Series have their principal

place of business at 2701 S. Le Jeune Road, 10th Floor in Coral Gables, Florida.

12.     MSPRC has established various designated series pursuant to Delaware law in

order to maintain various claims recovery assignments separate from other company assets, and

to account for and associate certain assets with certain particular series. All designated series

form a part of MSPRC and pursuant to MSPRC's LLC Agreement and applicable amendment(s),

each designated series is owned and controlled by MSPRC. MSPRC may receive assignments in

the name of MSPRC, and further associate such assignments with a particular designated series

or may have claims assigned directly to a particular designated series. In either event, pursuant to

its LLC Agreement, any rights and benefits arising from assignments to its designated series

shall belong to MSPRC, and MSPRC maintains the legal right to sue on behalf of each of its

designated series and pursue any and all rights, benefits, and causes of action arising from

assignments to a designated series:

Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

Section 2 of LLC Agreement (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added). As such, MSPRC has the right and authority to seek reimbursement of Medicare payments made by its designated series' assignors that should have been paid by Defendant in the first instance.

13.     MSPRC's LLC Agreement provides that any rights and benefits arising from assignments to its series shall belong to MSPRC.

14.     Defendant Allstate Insurance Company is a company that issues liability policies, with its principal place of business at 2775 Sanders Road in Northbrook, Illinois.[4]

15.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).  At least one member of the class is a citizen of a different state than Defendant and the aggregate amount

---

[4] In lieu of Plaintiff amending its Complaint to add all Allstate subsidiary and affiliated corporate entities reporting to CMS under Responsible Reporting Entity numbers 19147, 19160 and 20619, as of the date of the Amended Complaint (collectively, Allstate), which Plaintiff believes in good faith entered into settlement agreements with Plaintiff's assignors' beneficiaries, the parties have agreed that only Allstate Insurance Company will be named as a defendant. By entering into this stipulation, Allstate does not waive and expressly preserves the right to assert any specific defenses it believes it may have to any purported unreimbursed secondary payments, except that Allstate Insurance Company agrees that in this case it will not raise as a defense that another Allstate entity, as previously defined herein, entered into any purported settlement agreements that Plaintiff contends give rise to liability. This Stipulation applies only to this matter.

in controversy exceeds $5,000,000.00, exclusive of interest and costs.

16.     This Court has federal question jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.

17.     This Court has personal jurisdiction under Florida Statute Section 48.193 because Defendant: (a) has contracted to insure a person, property, or risk located within this state at the time of contracting; and (b) operates, conducts, and carries on a business venture in the State of Florida. *See* Fla. Stat. § 48.193(1)(a)(1), (1)(a)(4). This Court also has personal jurisdiction over Defendant under Florida Statute Section 48.193(1)(a)(2) for having committed a tortious act within this State, that is, Defendant's violations of the MSP Act. Specifically, a substantial number of the claims identified by Plaintiff arise from Defendant's conduct within this State. Defendant has failed to reimburse Plaintiff's Florida-based assignors and has failed to reimburse Plaintiff's assignors for treatments rendered by Florida-based providers to Enrollees located or residing in the State of Florida or both. As set forth in greater detail below, the F.F., H.S., V.B., Y.F., D.S., M.S., P.K., M.G., E.S., N.H., C.M., B.H., and W.F. claims arise from Defendant's conduct within this state.

18.     As an example, for the Y.F. claim below, Allstate underwrote the Florida automobile insurance policy for the driver, who injured Y.F. in an automobile accident in Florida. Plaintiff's Florida-based assignor made accident-related payments to Y.F. On information and belief, Allstate subsequently accepted payment responsibility through a settlement agreement with Y.F. On information and belief, Allstate failed to reimburse secondary payments belonging to Plaintiff's assignor, giving rise to MSP Act liability based solely on conduct taking place in this state.

19.     Further, Defendant maintains sufficient minimum contacts with the State of Florida

so as to not offend traditional notions of fair play and substantial justice. Defendant maintains and carries on systematic and continuous contacts in this judicial district, regularly transacts business within this judicial district, and regularly avails itself of the benefits of this judicial district. Defendant has purposefully availed itself of the privilege of conducting activities within the State of Florida, thus invoking the benefits and protections of its laws. Defendant's purposeful availment was such that it should have reasonably anticipated being haled into court in this forum.

20.     At all times herein mentioned, Defendant was authorized to or otherwise engaged in business within the State of Florida and did in fact offer insurance policies that contain liability coverage for any accident-related medical expense within the State of Florida and elsewhere. Defendant is registered with Florida's Division of Corporation to transact business within the State of Florida and is licensed to underwrite insurance policies in the State of Florida. Defendant underwrote millions of dollars in direct premiums in Florida, earned millions of dollars in direct premiums in Florida, and paid millions of dollars in direct losses in Florida.

21.     Exercising personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

22.     A substantial part of the events and omissions giving rise to Plaintiff's causes of action occurred in this federal judicial district.

23.     Venue is proper under 28 U.S.C. § 1391 in this District because it is the district in which the cause of action accrued.

## ASSIGNMENTS

24.     Plaintiff has been assigned all legal rights of recovery and reimbursement for medical items and services provided by numerous assignors that administer Medicare benefits for Medicare beneficiaries under Medicare Part C, whether said rights arise from: (i) contractual

agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of payments made by the assignor health plans, including the right to recover claims for health care services on a fee-for-service basis.[5]

26.      Plaintiff's assignors have assigned all rights, title, and interest to the recoverable claims, conferring standing to Plaintiff to bring this lawsuit. The assignments are valid and binding contracts. All claims identified by Plaintiff fall within the scope of the assignment agreements entered into by Plaintiff and its assignors.

26.      Plaintiff's assignors paid for the unreimbursed medical items and services related to the treatment of injuries arising from an accident and/or incident for which Defendant was responsible as the primary payer.

27.      Certain designated series of Plaintiff have been irrevocably assigned any and all rights to recover payments made on behalf of their assignors' health plan members and Enrollees. These assignments authorize the designated series, and in turn Plaintiff through its LLC Agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

28.      The assignments that give Plaintiff the right to recover on the examples listed below are alleged in Appendix 2 to this Complaint and are valid and binding contracts.

## GENERAL ALLEGATIONS

29.      This is a class action lawsuit under the MSP Act, arising from Defendant's

---

[5] The true scope of all assignors (and claims) at issue in this case cannot be known until the parties have exchanged data, and Plaintiff has the right to discover information that is solely in the possession, custody, and control of Defendant. Allstate agreed in a related case to exchange this information because it will streamline the issues before the Court and will allow the parties to conduct efficient and targeted discovery.

systematic and uniform failure to reimburse conditional payments made by Plaintiff's assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

30.     Defendant's liability to reimburse such conditional payments arises where Defendant has entered into settlement agreements with Enrollees as a result of claims filed under liability insurance policies[6] issued by Defendant.

31.     On behalf of themselves and the Class Members, Plaintiff seeks, among others, double damages under the MSP Act's private cause of action for Defendant's failure to properly reimburse Plaintiff's assignors' and the Class Members' conditional payments for Enrollees' accident-related medical expenses.

32.     Defendant has failed to fulfill statutory duties as primary payer by failing to pay or reimburse conditional payments by Plaintiff's assignors and Class Members on behalf of Enrollees for accident-related medical expenses. Enrollees are Medicare beneficiaries who were enrolled in an MA Plan offered or managed by Plaintiff's assignors and Class Members. Plaintiff's assignors and the Class Members suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly have standing to sue under 42 U.S.C. §1395y(b)(3)(A).

33.     Plaintiff's assignors and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, Enrollees suffered injuries in connection with an accident for which Defendant's insureds were liable and covered under liability insurance policies issued by Defendant, and Plaintiff's assignors and the putative Class Members paid for accident-related

---

[6] Liability insurance plans are primary plans under 42 U.S.C. § 1395y(b)(2). They include third-policy policies that provide for bodily injury coverage, uninsured motorist coverage, underinsured motorist coverage, umbrella coverage, and commercial coverage.

medical expenses.[7] Thereafter, on information and belief, Defendant entered into settlement agreements with Enrollees as a result of claims arising under said liability insurance policies. Accordingly, Defendant is a primary payer under the MSP Act and either should have directly paid the Enrollees' accident-related medical expenses or reimbursed Plaintiff's assignors and the putative Class Members for the conditional payments they made, but have failed to do so.

34.     The MSP Act does not require MA Plans to file a claim with or give notice to a primary payer, such as Defendant, as a condition to seeking reimbursement of conditional payments. *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020) (11th Cir. Sept. 4, 2020); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764 (11th Cir. 2020); *MSP Recovery Claims, Series LLC, et al. v. The Progressive Corp., et al.*, No. 1:18-cv-2273, 2019 WL 5448356 (N.D. Ohio Sept. 17, 2019); *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19-cv-00219, 2019 WL 6770729 (N.D. Ohio Dec. 12, 2019).

35.     Rather than honor its obligations under the MSP Act, Defendant systematically and deliberately takes steps to avoid paying or reimbursing the accident-related medical expenses paid by Plaintiff's assignors and the Class Members on behalf of Enrollees. These steps include failing to report its primary payer responsibility to CMS and failing to coordinate benefits[8] with MA Plans, including specifically with Plaintiff on behalf of Plaintiff's assignors.

---

[7] MA Plans are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendants. MA Plans cannot reasonably expect that a primary payer is liable for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MA Plans, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[8] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

36.     Defendant's deliberate non-compliance with reporting requirements under the MSP Act and refusal to coordinate benefits with MA Plans are designed to avoid detection as the primary payer responsible for Enrollees' accident-related medical expenses, ultimately allowing Defendant to avoid its obligations as a primary payer. This underreporting/misreporting to CMS regarding payments and beneficiaries is systematic.

37.     On information and belief, Defendant has failed to report its primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's assignors for accident-related medical expenses on behalf of Plaintiff's assignors' Enrollees, for which Defendant has a demonstrated responsibility to pay under the MSP Act.

38.     As described in detail herein, Plaintiff's assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

39.     Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "MSP System"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[9] to identify claims where Defendant has failed to honor its primary payer responsibilities.

40.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury,

---

[9] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix 1 to this Complaint. *See also* Centers for Medicare and Medicaid Services, Medicare Learning Network, Medicare Billing: Form CMS-1500 and the 837 Professional (July 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

41.     The MSP System captures data from different sources, including CMS, ISO and publicly available police crash and incident reports, to identify unreimbursed conditional payments made by Plaintiff's assignors for their Enrollees' accident-related medical expenses for which Defendant is responsible as the primary payer.

42.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's assignors' EDI, Class Members' EDI and Defendant's EDI, to discover and identify unreimbursed conditional payments made by Plaintiff's assignors for accident-related medical expenses on behalf of their Enrollees for which Defendant is responsible as the primary payer. This data matching process can also be applied class-wide by matching Defendant's EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendant is responsible.

43.     Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendant. While Plaintiff describes in detail a few of those claims below, attached as **Exhibit A** are all of the instances where Defendant admitted, by reporting to CMS, that it was obligated (pursuant to a liability policy) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's assignors.

44.     For the Exhibit A, in every instance, one of Plaintiff's assignors made payments on behalf of the identified enrollee for whom Defendant reported and admitted its primary payer responsibility. Exhibit A identifies the assignor, the Enrollee's member ID and full name, the date

of loss (Enrollment Date), the primary plan contract or policy number as reported by Defendant, the reported primary "plan name," and the primary insurance type. On information and belief, in those instances where Defendant reported itself responsible pursuant to liability policies, it did so as a result of entering into settlement agreements with the Enrollee at issue. Minimal discovery is needed to fully identify the full scope of claims, beneficiaries, amounts, and assignors in this case and, as noted above, can be accomplished through an exchange of data, similar to what already is occurring in the related Allstate case.

45.     By virtue of Defendant's own actions, settlements, and reporting pursuant to 42 U.S.C. § 1395y(b)(7)-(9), Defendant had actual and constructive knowledge of its primary payer obligations to Plaintiff's assignors, the Class Members, and the entire Medicare Advantage system, specifically that it was responsible to reimburse Plaintiff's assignors and the Class Members for accident-related medical expenses.

46.     What is listed in Exhibit A are instances where Defendant has attempted to satisfy its duty to report pursuant 42 U.S.C. § 1395y(b)(7)-(9). However, in violation of federal law, auto insurers do not report all of their claims. The full extent of Defendant's liability on unreported claims can only be known through the data matching process described above, which is underway in the related Allstate case and others.

47.     To illustrate the types of claims at issue, and to remove any doubt as to Plaintiff's standing, Plaintiff has identified examples below in which Plaintiff's assignors made conditional payments for accident-related medical expenses which should have been reimbursed by Defendant. The entire universe of unreimbursed conditional payments owed to Plaintiff cannot be fully identified without discovery and matching of the parties' data.

48.     Each of the exemplar claims set forth herein has been assigned to Plaintiff. The

claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to recover for these claims.[10]

49.     The allegations set forth herein plainly demonstrate that Plaintiff's assignors suffered damages as a direct result of Defendant's individual failure to reimburse conditional payments as required under the MSP Act.

50.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

51.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service be "reasonable and necessary."

52.     Once an MA Plan makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

53.     The items and services received by and paid on behalf of Plaintiff's assignors' Enrollees, including the exemplar claims below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

54.     In each of these instances below, Defendant has reported and admitted its primary payer status and responsibility for the accident-related medical expenses for medical items and/or services provided to Enrollees and for which Plaintiff's assignors made conditional payments.

---

[10] Plaintiff's process for confirming that the exemplar claims are not excluded from the assigned claims is alleged in detail in Appendix 2 of this Complaint.

## The Exemplar Claims Illustrating Standing

### *The V.B. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

55.     On April 27, 2018, V.B. was enrolled in an MA Plan issued and administered by AvMed, Inc. ("AVDI"), pursuant to CMS Contract ID Number H1016.[11] AVDI is an MAO.

56.     On April 27, 2018, V.B. was injured in an accident. As a direct and proximate result of the accident, V.B. sustained injuries that required medical items and services.

57.     The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 0500156914.

58.     A list of V.B.'s diagnosis codes and injuries in connection with V.B.'s accident-related treatment is attached hereto as **Exhibit B**.

59.     The medical services were rendered on April 28, 2018. The medical providers subsequently issued bills to AVDI for payment of V.B.'s accident-related medical expenses.

60.     The medical providers billed and charged AVDI $5,653.41 for V.B.'s accident-related medical expenses, of which AVDI paid $65.17.

61.     On information and belief, following V.B.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with V.B.[12] By entering into that settlement and releasing all claims, including medical expenses, Defendant Allstate Insurance Company is a primary payer responsible for payment and/or reimbursement of V.B.'s accident-related medical expenses.

---

[11] AVDI only operates under CMS Contract ID Number H1016. *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory.

[12] The information needed to confirm whether Defendant entered into a settlement with V.B. is in the Defendant's possession, custody, and control.

62.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of V.B.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Co," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

63.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AVDI. Despite reporting that it was a primary payer, and the corresponding admission that it was statutorily obligated to pay for V.B.'s accident-related injuries, Defendant failed to reimburse AVDI's conditional payments, giving rise to a claim under the MSP Act.

64.     The V.B. claim was assigned to Plaintiff and is not an excluded claim under any of the assignment's carve-outs because: (1) the claim is not asserted against one of AVDI's network healthcare providers or current or former members and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

65.     Accordingly, Plaintiff is entitled to recover double the amount billed for V.B.'s accident-related medical expenses.

### The F.F. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

66.     On May 26, 2017, F.F. was enrolled in an MA Plan issued and administered by AVDI, pursuant to CMS Contract ID Number H1016.

67.     On May 26, 2017, F.F. was injured in an accident. As a direct and proximate result of the accident, F.F. sustained injuries that required medical items and services.

68.     The tortfeasor responsible for the accident was insured by Allstate Insurance

Company under policy number 458369196.

69.     A list of F.F.'s diagnosis codes and injuries in connection with F.F.'s accident-related treatment is attached hereto as **Exhibit C**.

70.     The medical services were rendered between May 27, 2017 and December 10, 2017. The medical providers subsequently issued bills to AVDI for payment of F.F.'s accident-related medical expenses.

71.     The medical providers billed and charged AVDI $14,429.78 for F.F.'s accident-related medical expenses, of which AVDI paid $3,105.36.

72.     On information and belief, following F.F.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with F.F.[13] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of F.F.'s accident-related medical expenses.

73.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of F.F.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

74.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AVDI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for F.F.'s accident-related injuries, Defendant

---

[13] The information needed to confirm whether Defendant entered into a settlement with F.F. is in the Defendant's possession, custody, and control.

failed to reimburse AVDI's conditional payments, giving rise to a claim under the MSP Act.

75.     The F.F. claim was assigned to Plaintiff and is not an excluded claim under any of the assignment's carve-outs because: (1) the claim is not asserted against one of AVDI's network healthcare providers or current or former members and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

76.     Accordingly, Plaintiff is entitled to recover double the amount billed for F.F.'s accident-related medical expenses.

### The Y.F. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

77.     On May 27, 2018, Y.F. was enrolled in an MA Plan issued and administered by AVDI, pursuant to CMS Contract ID Number H1016.

78.     On May 27, 2018, Y.F. was injured in an accident. As a direct and proximate result of the accident, Y.F. sustained injuries that required medical items and services.

79.     The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 0503582371 or Allstate Fire and Casualty Insurance Company under policy number 981679442.[14]

80.     A list of Y.F.'s diagnosis codes and injuries in connection with Y.F.'s accident-related treatment is attached hereto as **Exhibit D**.

81.     The medical services were rendered between June 2, 2018 and June 5, 2018. The medical providers subsequently issued bills to AVDI for payment of Y.F.'s accident-related medical expenses.

---

[14] Plaintiff is unable to allege with certainty the responsible insurer or liability policy for this accident because different Allstate entities and policy numbers were identified in the Florida Traffic Crash Report and Section 111 reporting data obtained from MyAbility.

82.     The medical providers billed and charged AVDI $459.23 for Y.F.'s accident-related medical expenses, of which AVDI paid $153.48.

83.     On information and belief, following Y.F.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with Y.F.[15] By entering into that settlement and releasing all claims, including medical expenses, Defendant is the primary payer responsible for payment and/or reimbursement of Y.F.'s accident-related medical expenses.

84.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of Y.F.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Fire and Casualty Insurance," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

85.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AVDI. Despite reporting that it was the primary payer, and the corresponding admission that it should have paid for Y.F.'s accident-related injuries, Defendant failed to reimburse AVDI's conditional payments, giving rise to a claim under the MSP Act.

86.     The Y.F. claim was assigned to Plaintiff and is not an excluded claim under any of the assignment's carve-outs because: (1) the claim is not asserted against one of AVDI's network healthcare providers or current or former members and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

87.     Accordingly, Plaintiff is entitled to recover double the amount billed for Y.F.'s

---

[15] The information needed to confirm whether Defendant entered into a settlement with Y.F. is in the Defendant's possession, custody, and control.

accident-related medical expenses.

> ### *The H.S. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

88.     On June 29, 2017, H.S. was enrolled in an MA Plan issued and administered by AVDI, pursuant to CMS Contract ID Number H1016.

89.     On June 29, 2017, H.S. was injured in an accident. As a direct and proximate result of the accident, H.S. sustained injuries that required medical items and services.

90.     The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 0462638255.

91.     A list of H.S.'s diagnosis codes and injuries in connection with H.S.'s accident-related treatment is attached hereto as **Exhibit E**.

92.     The medical services were rendered between June 29, 2017 and August 7, 2017. The medical providers subsequently issued bills to AVDI for payment of H.S.'s accident-related medical expenses.

93.     The medical providers billed and charged AVDI $13,737.24 for H.S.'s accident-related medical expenses, of which AVDI paid $6,141.32.

94.     On information and belief, following H.S.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with H.S.[16] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of H.S.'s accident-related medical expenses.

---

[16] The information needed to confirm whether Defendant entered into a settlement with H.S. is in the Defendant's possession, custody, and control.

95.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of H.S.'s accident-related medical expenses. Defendant reported responsibility under "Allstate," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

96.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse AVDI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for H.S.'s accident-related injuries, Defendant failed to reimburse AVDI's conditional payments, giving rise to a claim under the MSP Act.

97.     The H.S. claim was assigned to Plaintiff and is not an excluded claim under any of the assignment's carve-outs because: (1) the claim is not asserted against one of AVDI's network healthcare providers or current or former members and (2) the claim does not arise or relate to GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico.

98.     Accordingly, Plaintiff is entitled to recover double the amount billed for H.S.'s accident-related medical expenses.

### *The E.S. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

99.     On November 13, 2014, E.S. was enrolled in an MA Plan issued and administered by Health First Health Plans ("HFHP"), pursuant to CMS Contract ID Number H1099.[17] HFHP is an MAO.

100.    On November 13, 2014, E.S. was injured in an accident. As a direct and proximate

---

[17] HFHP only operates under CMS Contract ID Number H1099. *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory.

result of the accident, E.S. sustained injuries that required medical items and services.

101.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 000971900318.

102.    A list of E.S.'s diagnosis codes and injuries in connection with E.S.'s accident-related treatment is attached hereto as **Exhibit F**.

103.    The medical services were rendered on November 13, 2014. The medical providers subsequently issued bills to HFHP for payment of E.S.'s accident-related medical expenses.

104.    The medical providers billed and charged HFHP $3,395.36 for E.S.'s accident-related medical expenses, of which HFHP paid $244.09.

105.    On information and belief, following E.S.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with E.S.[18] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of E.S.'s accident-related medical expenses.

106.    Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of E.S.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Fire and Casualty Insurance," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

107.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse HFHP. Despite reporting that it was a primary payer, and the

---

[18] The information needed to confirm whether Defendant entered into a settlement with E.S. is in the Defendant's possession, custody, and control.

corresponding admission that it should have paid for E.S.'s accident-related injuries, Defendant failed to reimburse HFHP's conditional payments, giving rise to a claim under the MSP Act.

108.    The E.S. claim has not previously been the subject of a subrogation case by HFHP.

109.    Because HFHP made payment on behalf of E.S. for dates of services between February 5, 2007 and November 23, 2016, the E.S. claim falls within the Assigned Claims under the HFHP Assignment and has not otherwise been excluded from the Assigned Claims.

110.    Accordingly, Plaintiff is entitled to recover double the amount billed for E.S.'s accident-related medical expenses.

### *The D.S. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

111.    On July 11, 2017, D.S. was enrolled in an MA Plan issued and administered by Family Physicians Group d/b/a Family Physicians of Winter Park, P.A. ("FPGI"), which is a risk-bearing MSO.

112.    On July 11, 2017, D.S. was injured in an accident. As a direct and proximate result of the accident, D.S. sustained injuries that required medical items and services.

113.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 9616182781109.

114.    A list of D.S.'s diagnosis codes and injuries in connection with D.S.'s accident-related treatment is attached hereto as **Exhibit G**.

115.    The medical services were rendered between July 11, 2017 and July 12, 2017. The medical providers subsequently issued bills to FPGI for payment of D.S.'s accident-related medical expenses.

116.    The medical providers billed and charged FPGI $109,938.04 for D.S.'s accident-

related medical expenses, of which FPGI paid $4,319.68.

117.    On information and belief, following D.S.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with D.S.[19] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of D.S.'s accident-related medical expenses.

118.    Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of D.S.'s accident-related medical expenses. Defendant reported responsibility under "Allstate," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

119.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse FPGI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for D.S.'s accident-related injuries, Defendant failed to reimburse FPGI's conditional payments, giving rise to a claim under the MSP Act.

120.     Accordingly, Plaintiff is entitled to recover double the amount billed for D.S.'s accident-related medical expenses.

> ### *The M.S. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

121.    On August 5, 2016, M.S. was enrolled in an MA Plan issued and administered by FPGI, which is a risk-bearing MSO.

---

[19] The information needed to confirm whether Defendant entered into a settlement with D.S. is in the Defendant's possession, custody, and control.

122.    On August 5, 2016, M.S. was injured in an accident. As a direct and proximate result of the accident, M.S. sustained injuries that required medical items and services.

123.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 000981163547.

124.    A list of M.S.'s diagnosis codes and injuries in connection with M.S.'s accident-related treatment is attached hereto as **Exhibit H**.

125.    The medical services were rendered between August 5, 2016 and August 16, 2017. The medical providers subsequently issued bills to FPGI for payment of M.S.'s accident-related medical expenses.

126.    The medical providers billed and charged FPGI $72,986.00 for D.S.'s accident-related medical expenses, of which FPGI paid $2,130.68.

127.    On information and belief, following M.S.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with M.S.[20] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of M.S.'s accident-related medical expenses.

128.    Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of M.S.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Company," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

---

[20] The information needed to confirm whether Defendant entered into a settlement with M.S. is in the Defendant's possession, custody, and control.

129.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse FPGI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for M.S.'s accident-related injuries, Defendant failed to reimburse FPGI's conditional payments, giving rise to a claim under the MSP Act.

130.     Accordingly, Plaintiff is to recover double the amount billed for its failure to reimburse FPGI's conditional payment for M.S.'s accident-related medical expenses.

### *The P.K. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

131.     On January 26, 2016, P.K. was enrolled in an MA Plan issued and administered by FPGI, which is a risk-bearing MSO.

132.     On January 26, 2016, P.K. was injured in an accident. As a direct and proximate result of the accident, P.K. sustained injuries that required medical items and services.

133.     The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 000081188237.

134.     A list of P.K.'s diagnosis codes and injuries in connection with P.K.'s accident-related treatment is attached hereto as **Exhibit I**.

135.     The medical services were rendered between January 26, 2016 and April 19, 2016. The medical providers subsequently issued bills to FPGI for payment of P.K.'s accident-related medical expenses.

136.     The medical providers billed and charged FPGI $331,796.38 for P.K.'s accident-related medical expenses, of which FPGI paid $62,125.04.

137.     On information and belief, following P.K.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with

P.K.[21] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of P.K.'s accident-related medical expenses.

138.    Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of P.K.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Company," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

139.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse FPGI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for P.K.'s accident-related injuries, Defendant failed to reimburse FPGI's conditional payments, giving rise to a claim under the MSP Act.

140.    Accordingly, Plaintiff is entitled to recover double the amount billed for P.K.'s accident-related medical expenses.

### *The M.G. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

141.    On September 19, 2016, M.G. was enrolled in an MA Plan issued and administered by FPGI, which is a risk-bearing MSO.

142.    On September 19, 2016, M.G. was injured in an accident. As a direct and proximate result of the accident, M.G. sustained injuries that required medical items and services.

143.    The tortfeasor responsible for the accident was insured by Allstate Insurance

---

[21] The information needed to confirm whether Defendant entered into a settlement with P.K. is in the Defendant's possession, custody, and control.

Company under policy number 0429227572.

144.     A list of M.G.'s diagnosis codes and injuries in connection with M.G.'s accident-related treatment is attached hereto as **Exhibit J**.

145.     The medical services were rendered between September 19, 2016 and September 20, 2016. The medical providers subsequently issued bills to FPGI for payment of M.G.'s accident-related medical expenses.

146.     The medical providers billed and charged FPGI $94,136.72 for M.G.'s accident-related medical expenses, of which FPGI paid $2,087.62.

147.     On information and belief, following M.G.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with M.G.[22] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of M.G.'s accident-related medical expenses.

148.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of M.G.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

149.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse FPGI. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for M.G.'s accident-related injuries, Defendant

---

[22] The information needed to confirm whether Defendant entered into a settlement with M.G. is in the Defendant's possession, custody, and control.

failed to reimburse FPGI's conditional payments, giving rise to a claim under the MSP Act.

150.    Accordingly, Plaintiff is entitled to recover double the amount billed for M.G.'s accident-related medical expenses.

> ### *The N.H. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

151.    On April 7, 2013, N.H. was enrolled in an MA Plan issued and administered by Trinity Physicians LLC ("TPS"), which is a risk-bearing MSO.

152.    On April 7, 2013, N.H. was injured in an accident. As a direct and proximate result of the accident, N.H. sustained injuries that required medical items and services.

153.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 9616874950228.

154.    A list of N.H.'s diagnosis codes and injuries in connection with N.H.'s accident-related treatment is attached hereto as **Exhibit K**.

155.    The medical services were rendered between April 7, 2013 and August 29, 2013. The medical providers subsequently issued bills to TPS for payment of N.H.'s accident-related medical expenses.

156.    The medical providers billed and charged TPS $12,405.68 for N.H.'s accident-related medical expenses, of which TPS paid $3,530.31.

157.    On information and belief, following N.H.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with N.H.[23] By entering into that settlement and releasing all claims, including medical expenses,

---

[23] The information needed to confirm whether Defendant entered into a settlement with N.H. is in the Defendant's possession, custody, and control.

Defendant is a primary payer responsible for payment and/or reimbursement of N.H.'s accident-related medical expenses.

158.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of N.H.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Company," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

159.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse TPS. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for N.H.'s accident-related injuries, Defendant failed to reimburse TPS's conditional payments, giving rise to a claim under the MSP Act.

160.     Accordingly, Plaintiff is entitled to recover double the amount billed for N.H.'s accident-related medical expenses.

### *The C.M. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries*

161.     On October 19, 2013, C.M. was enrolled in an MA Plan issued and administered by Verimed IPA, LLC ("VMIL"), which is a risk-bearing IPA.

162.     On October 19, 2013, C.M. was injured in an accident. As a direct and proximate result of the accident, C.M. sustained injuries that required medical items and services.

163.     The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 9414696891031.

164.     A list of C.M.'s diagnosis codes and injuries in connection with C.M.'s accident-related treatment is attached hereto as **Exhibit L**.

165.     The medical services were rendered on October 19, 2013. The medical providers subsequently issued bills to VMIL for payment of C.M.'s accident-related medical expenses.

166.     The medical providers billed and charged VMIL $1,639.00 for C.M.'s accident-related medical expenses, of which VMIL paid $229.79.

167.     On information and belief, following C.M.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with C.M.[24] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of C.M.'s accident-related medical expenses.

168.     Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of C.M.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Company," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

169.     This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse VMIL. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for C.M.'s accident-related injuries, Defendant failed to reimburse VMIL's conditional payments, giving rise to a claim under the MSP Act.

170.     Accordingly, Plaintiff is entitled to recover double the amount billed for C.M.'s accident-related medical expenses.

---

[24] The information needed to confirm whether Defendant entered into a settlement with C.M. is in the Defendant's possession, custody, and control.

***The B.H. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries***

171.    On July 16, 2014, B.H. was enrolled in an MA Plan issued and administered by VMIL, which is a risk-bearing IPA.

172.    On July 16, 2014, B.H. was injured in an accident. As a direct and proximate result of the accident, B.H. sustained injuries that required medical items and services.

173.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 981205361.

174.    A list of B.H.'s diagnosis codes and injuries in connection with B.H.'s accident-related treatment is attached hereto as **Exhibit M**.

175.    The medical services were rendered between July 16, 2014 and September 30, 2014. The medical providers subsequently issued bills to VMIL for payment of B.H.'s accident-related medical expenses.

176.    The medical providers billed and charged VMIL $93,677.06 for B.H.'s accident-related medical expenses, of which VMIL paid $11,623.49.

177.    On information and belief, following B.H.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with B.H.[25] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of B.H.'s accident-related medical expenses.

178.    Defendant reported to CMS information regarding the accident, the name of the

---

[25] The information needed to confirm whether Defendant entered into a settlement with B.H. is in the Defendant's possession, custody, and control.

reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of B.H.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance Company," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

179.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse VMIL. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for B.H.'s accident-related injuries, Defendant failed to reimburse VMIL's conditional payments, giving rise to a claim under the MSP Act.

180.    Accordingly, Plaintiff is entitled to recover double the amount billed for B.H.'s accident-related medical expenses.

### The W.F. Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Reimburse upon Entering into Settlements with Medicare Beneficiaries

181.    On August 28, 2013, W.F. was enrolled in an MA Plan issued and administered by VMIL, which is a risk-bearing IPA.

182.    On August 28, 2013, W.F. was injured in an accident. As a direct and proximate result of the accident, W.F. sustained injuries that required medical items and services.

183.    The tortfeasor responsible for the accident was insured by Allstate Insurance Company under policy number 0297967705HJW.

184.    A list of W.F.'s diagnosis codes and injuries in connection with W.F.'s accident-related treatment is attached hereto as **Exhibit N**.

185.    The medical services were rendered between August 28, 2013 and October 29, 2013. The medical providers subsequently issued bills to VMIL for payment of W.F.'s accident-related medical expenses.

186.    The medical providers billed and charged VMIL $18,240.99 for W.F.'s accident-related medical expenses, of which VMIL paid $391.47.

187.    On information and belief, following W.F.'s claim against Defendant's insured, Defendant indemnified its insured tortfeasor and made payments pursuant to a settlement with W.F.[26] By entering into that settlement and releasing all claims, including medical expenses, Defendant is a primary payer responsible for payment and/or reimbursement of W.F.'s accident-related medical expenses.

188.    Defendant reported to CMS information regarding the accident, the name of the reporting entity, and the type of insurance policy involved, and admitted its primary payer status related to payment and/or reimbursement of W.F.'s accident-related medical expenses. Defendant reported responsibility under "Allstate Insurance," but because of Defendant's imprecise reporting, Plaintiff cannot confirm the insurer for this claimant.

189.    This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse VMIL. Despite reporting that it was a primary payer, and the corresponding admission that it should have paid for W.F.'s accident-related injuries, Defendant failed to reimburse VMIL's conditional payments, giving rise to a claim under the MSP Act.

190.    Accordingly, Plaintiff is to recover double the amount billed for W.F.'s accident-related medical expenses.

### CLASS ACTION ALLEGATIONS

191.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-

---

[26] The information needed to confirm whether Defendant entered into a settlement with W.F. is in the Defendant's possession, custody, and control.

related medical expenses, when Defendant should have made those payments as the primary payer in the first instance or reimbursed the Class Members.

192.   As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money it was statutorily required to pay under the MSP Act. This failure to reimburse applies to Plaintiff, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

193.   Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

194.   The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

   a. **<u>Numerosity</u>**:   Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Plans (including their assignees) throughout the United States who were not reimbursed by Defendant after it entered into settlements with Medicare beneficiaries enrolled in MA Plans. Thus, the numerosity element for class certification is met.

b. **Commonality**:  Questions of law and fact are common to all members of the Class. Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendant failed to reimburse conditional payments, report settlements and report its Ongoing Responsibility for Medicals ("ORM") involving individuals who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with its statutory duty to pay or reimburse MA Plans pursuant to the MSP Act. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **Typicality**:  Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representatives, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, thereby demonstrating a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments or reimburse conditional payments for Enrollees' accident-related medical expenses, which it was obligated

37

to do pursuant to its settlements with Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, has a right to relief for Defendant's failure to make primary payments or reimburse Plaintiff's assignors and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MA Plans and providing notice to such entities could be accomplished by direct communication.

195.   The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendant, whether deliberately or not, failed to make required payments under the MSP Act and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignees of the right to

recovery, and Class Members of their statutory right to payment and reimbursement.

196.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of class-wide impact. Plaintiff proposes to capture, compile, synthesize and analyze large amounts of data to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using a methodology to identify and quantify Class Members' claims, as it has done for its own claims.

197.     Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

198.     Administering the proposed Damages Class will be relatively simple. Defendant provided liability policies to individuals who caused accidents injuring Medicare beneficiaries. Once that data identifying these claims is compiled and organized, Plaintiff can determine which

claimants were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff and the Class Members can identify unreimbursed conditional payments made for accident-related medical expenses where Defendant was the primary payer.

## CLASS DEFINITION

199.    The putative class (referred to herein as "Class Members") is defined as:

All Medicare Advantage Plans and downstream actors (or their assignees) that have borne the cost of conditional payments in providing benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with a Medicare Advantage Plan Enrollee;

(2) settled a dispute to pay for medical expenses with a Medicare Advantage Plan Enrollee; and

(3) failed to reimburse Medicare Advantage Plans (or their assignees) for their conditional payments upon settling with a Medicare Enrollee.

This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

200.    All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

## CAUSES OF ACTION

201.    Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available. Defendant issues liability insurance policies and is thus the primary payer liable under the MSP Act.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

202.    Plaintiff re-alleges and incorporates herein by reference each of the allegations

contained in the preceding paragraphs as if fully set forth herein.

203.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly situated parties.

204.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

205.    Defendant's liability policies are primary plans, which rendered Defendant the primary payer for accident-related medical expenses.

206.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, Plaintiff's assignors and the Class Members paid for items and services which were also covered by liability policies issued by Defendant.

207.    More specifically, on information and belief, Defendant entered into settlements with Enrollees of Plaintiff's assignors relating to accidents but failed to reimburse Plaintiff's assignors and the putative Class Members for accident-related medical expenses paid by Plaintiff's assignors and the putative Class Members on behalf of Enrollees. Defendant is liable for reimbursement of these accident-related medical expenses even if it subsequently paid out the maximum benefits under the policies.

208.    Because Defendant is the primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Act.

209.    Defendant was required to timely reimburse Plaintiff's assignors and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835

F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

210.    Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

211.    Defendant has derived substantial profits by placing the burden of financing medical treatments for which Defendant is responsible on the shoulders of Plaintiff's assignors and the Class Members.

212.    In this case, Defendant failed to administratively appeal Plaintiff's assignors' rights to reimbursement within the administrative remedies period on a class-wide basis. Defendant, therefore, is time-barred from challenging the propriety of amounts paid.

213.    Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

## JURY TRIAL DEMAND

214.    Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.  designate Plaintiff as representative for the respective Class Members and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c.  issue a judgment against Defendant that:

      i.      grants Plaintiff and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

      ii.      grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

      iii.      grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 26, 2021          Respectfully Submitted,

**RIVERO MESTRE LLP**
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:   (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: arolnick@riveromestre.com
E-mail: cwhorton@riveromestre.com
E-mail: ddaponte@riveromestre.com
Secondary: npuentes@riveromestre.com

By:    */s/* Andrés Rivero
        ANDRES RIVERO
        Florida Bar No. 613819
        JORGE A. MESTRE
        Florida Bar No. 088145
        ALAN H. ROLNICK
        Florida Bar No. 715085
        CHARLES E. WHORTON
        Florida Bar No. 46894
        DAVID L. DAPONTE
        Florida Bar No. 1002724

**ARMAS BERTRAN PIERI**
4960 S.W. 72nd Avenue, Suite 206
Miami, Florida 33155
(305) 461-5100
Fax: (786) 221-2903

By:    /s/ Francesco Zincone
        Francesco Zincone, Esq.,
        Florida Bar No. 100096

fzincone@armaslaw.com
Eduardo Bertran Esq.,
Florida Bar No. 94087
ebertran@armaslaw.com
J. Alfredo Armas, Esq.,
Florida Bar No. 360708
alfred@armaslaw.co

**MSP RECOVERY LAW FIRM**
2701 S. LeJeune Road, 10th Floor
Coral Gables, FL 33134
(305) 614-2222

By:    <u>/s/ John Ruiz</u>
        John H. Ruiz, Esq.,
        Florida Bar No. 29411
        jruiz@msprecovery.com

**PENDLEY,BAUDIN & COFFIN,LLP**
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Telephone: (312) 593-3354
Facsimile: (504) 355-0089

By:    <u>/s/ David M. Hundley</u>
        David M. Hundley
        (to be admitted *pro hac vice*)
        dhundley@pbclawfirm.com

***Counsel for Plaintiff***

## **APPENDIX 1**

### **CMS' Standard for Storing Digital Health Insurance Claims Data**

1. It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

  a. The 837 standard is mandated by the federal government and used by federal and state payors such as Medicare and Medicaid.

  b. The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

  c. Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2. Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

  a. <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

    i. According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.[27]

ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[28], 2011[29], 2012[30], 2013[31], 2014[32], and 2016.[33]

iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[34]

---

[27] *See* Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[28] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[29] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[30] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[31] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[32] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[33] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[34] Centers for Medicare & Medicaid Services, Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

     iv.  The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of loss, can be searched, sorted and properly selected as compensable or non-compensable claims.

     v.  In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

  b.  <u>Medical Diagnosis and Procedure Codes</u>:

     i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[3536]

---

[35] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[36] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information are reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.

ii.   International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

iii.   Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv.   Current Procedural Terminology ("CPT") – CPT[37] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[38]

v.   Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics

---

[37] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[38] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

and similar costs.[39]

    vi.   Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[40]

    vii.   Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

    viii.   The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

3.    CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

[39] Centers for Medicare and Medicaid Services, Medicare Learning Network, Hospital Outpatient Prospective Payment System (Feb. 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[40] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

**APPENDIX 2**

**Assignments**

***Plaintiff MSPRC's Assignments Demonstrating Standing***

1.       On June 26, 2019, **AvMed, Inc. ("AVDI")** irrevocably assigned to Series 17-03-615, a designated series of MSPRC, all rights under the MSP Act to recover against any liable primary payer (including Defendant) accident-related payments made on behalf of its Enrollees (the "AvMed Assignment"). The AvMed Assignment expressly provides, in pertinent part:

> Assignor irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its designated series, successors and assigns, any and all of Assignor's right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC), and (ii) any and all causes of action, claims and demands of any nature whatsoever relating to payments for health care services provided to Assignor's members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Assignor had, may have had, or has asserted against any party in connection with the Claims; and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Assignor arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the "Assigned Claims") . . . . The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

AvMed Assignment at § 1.1.1.

2.       The "Assigned Claims" exclude claims against "[AvMed's] network healthcare providers and current and former members" as well as "[c]laims arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico[.]" Defendant is not an AvMed "network healthcare provider" or "current [or] former member" and the claims at issue in this action do not relate "GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico."

3.      The AvMed Assignment also provided for a due diligence period wherein the Parties would exchange deliverables and enter into a separate "Stand-Alone Assignment Agreement" further evidencing the AvMed Assignment. Upon completion of the due diligence period and satisfaction of the various deliverables and agreed upon conditions, the Parties finalized the transaction, including exchanging compensation and executing the Stand-Alone Assignment Agreement.

4.      Consideration was given between each party in executing the AVDI Assignment.

5.      Effective April 28, 2016, **Health First Health Plans, Inc.** ("HFHP"), a Medicare Advantage organization, irrevocably assigned all rights to recover payments made on behalf of its Enrollees to MSP Recovery (the "HFHP Assignment"). The HFHP Assignment expressly provides, in pertinent part:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto . . . all of which shall constitute the "Assigned Claims."
>
> …
>
> The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

HFHP Assignment.[41]

---

[41] The agreements entered between MSP Recovery, Health First Administrative Plans, and Health First Health Plans have been the subject of much litigation over the last three years. However, the Eleventh Circuit Court of Appeals in *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*,

6.     On June 12, 2017, MSP Recovery assigned all rights acquired under the HFHP

Assignment to Series 16-05-456, a designated series of MSPRC (the "Series Assignment"). The

Series Assignment states:

> [T]he undersigned Assignor . . . irrevocably assigns, sells, transfers, conveys, sets
> over and delivers to Assignee and its successors and assigns, any and all of
> Assignor's right, title, ownership and interest in and to the Claims and Assigned
> Claims, (and all proceeds and products thereof, including any related assigned
> assets and assigned documents) as such terms are defined or contained in that
> certain (1) Assignment and (2) Addendum to the Recovery Agreement and
> Assignment Addendum, both given and effective April 28, 2016 and executed on
> June 1, 2018, by and between Health First Health Plans, Inc., a Florida corporation
> and Medicare Advantage Organization and party to contract number H1099 with
> The Centers for Medicare & Medicaid Services, as the "Client" and health plan
> assignor, and [MSP Recovery], a Florida limited liability company (the
> "Assignment"); irrespective of when the claims were vested in Client, inclusive of
> any and all claim(s), causes of actions, proceeds, products and distributions of any
> kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort,
> statutory right, and any and all rights (including, but not limited to, subrogation) to
> pursue and/or recover monies that Assignor had, may have had, or has asserted
> against any party pursuant to the Assignment from the Client, including claims
> under consumer protection statutes and laws, any and all rights and claims against
> primary payers and/or third parties that may be liable to Client arising from or
> relating to the Claims and all information relating thereto.

7.     Further, on October 22, 2020, Series 16-05-456 entered into an assignment

agreement with to Series 44-20-456, a designated series of Series 44, whereby it irrevocably

assigned all rights it acquired through its assignment agreement with MSP Recovery. This third

assignment agreement was executed by individuals of majority, of sound mind, and with legal

authority to bind the respective parties, and was entered into under Florida law:

> [Series 16-05-456] . . . hereby irrevocably assigns, transfers, conveys, sets over,
> and delivers to [Series 44-20-456] and its successors and assigns, (i) any and all of
> Assignor's right, title, ownership, and interest in and to the [claims], as well as (ii)
> the "Claims" and "Assigned Claims", and all proceeds and products thereof
> (collectively the "Assigned Claims") as such terms are defined in the Agreements.

_____

965 F. 3d 1210 (11th Cir. 2020) held that the referenced document properly assigned the claims
and is the relevant document that provided MSP standing to assert HFHP recovery rights.

This Assignment includes all the Assigned Claims irrespective of when the claims were vested in HFHP, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to HFHP arising from or relating to the Claims and all information relating thereto.

8.      Consideration was given between each party in executing these assignments.

9.      On October 6, 2017, **Family Physicians of Winter Park, P.A.** ("FPGI"), a Florida professional association d/b/a Family Physicians Group, entered into an assignment agreement with MSP Recovery, LLC whereby it irrevocably assigned its right to recover payments pursuant to state and federal law. The assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Florida law. Pursuant to the terms of the assignment agreement, the parties agreed to maintain the terms of the assignment agreement confidential:

Client hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership, and interest in and to those Claims transferred to MSP Recovery for Claims' analysis and recovery pursuit on the date of transferring said claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client and Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is revocable upon mutual consent of Client and MSP Recovery as it pertains to any prospective claims. The claims assigned can only be re-assigned by agreement with both parties.

ix

10.     On October 10, 2017, MSP Recovery, LLC entered into an assignment agreement with Series 17-05-634, a designated series of MSP Recovery Claims, Series LLC, whereby it irrevocably assigned its right to recover payments pursuant to state and federal law as assigned from FPGI. This second assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties and was entered into under Delaware law:

> KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the **Recovery Agreement** dated **October 6, 2017**, by and among **[FPGI]**, and **MSP Recovery, LLC** a Florida limited liability company (the "**Agreement**"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have bad, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Agreement shall remain the confidential and exclusive property of Assignee or its assigns. The intent of the parties is to transfer any and all rights title and interest that MSP Recovery, LLC obtained as an assignee from the assignor.

(Emphasis original).

11.     Further, on October 22, 2020, Series 17-05-634 entered into an assignment agreement with Series 44-20-634, a designated series of Series 44, whereby it irrevocably assigned all rights it acquired through its assignment agreement with MSP Recovery, LLC. This third assignment agreement was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties, and was entered into under Florida law:

[Series 17-05-634] . . . hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee and its successors and assigns, (i) any and all of Assignor's right, title, ownership, and interest in and to that Agreement, as well as (ii) the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the Agreement.

This Assignment includes all the Assigned Claims irrespective of when the claims were vested in FPGI, inclusive of any and all claim(s), causes of actions, proceeds, products, and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to FPGI arising from or relating to the Claims and all information relating thereto.

12.     Consideration was given between each party in executing these assignments.

13.     On November 3, 2015, **Trinity Physicians, LLC ("TPS")** irrevocably assigned all to MSP Recovery 15-592, LLC its rights under the MSP Act to recover against any liable primary payer (including Defendant) for accident-related payments made on behalf of its Enrollees ("TPS Assignment"). Specifically, the TPS Assignment states the following:

[TPS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [TPS]'s right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [TPS] that [TPS] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [TPS] arising from or relating to the Assigned Claims.

TPS Assignment at § 1.1.

14.     On June 12, 2017, MSP Recovery 15-592, LLC, irrevocably assigned all rights acquired under the TPS Assignment to Series 15-11-371, LLC, a designated series of MSPRC ("Series 15-11-371 Assignment"):

Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [Assigned Claims] (and all proceeds and products thereof) as such terms are defined in the [TPS Assignment.]

Series 15-11-371 Assignment at p. 1.

15.     Consideration was given between each party in executing the TPS Assignment and

the Series 15-11-371 Assignment.

16.     On April 7, 2016, **Verimed IPA, LLC ("VMIL")** irrevocably assigned to MSP

Recovery, LLC all its rights under the MSP Act to recover against any liable primary payer

(including Defendant) for accident-related payments made on behalf of its Enrollees ("VMIL

Assignment"). Specifically, the VMIL Assignment, states the following:

> [VMIL] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [VMIL]'s
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including, but
> not limited to, subrogation) to pursue and/or recover monies for [VMIL] that
> [VMIL] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties that
> may be liable to [VMIL] arising from or relating to the Claims, including claims
> under consumer protection statutes and laws, and all information relating thereto,
> all of which shall constitute the "Assigned Claims". The transfer, grant, right, or
> assignment of any and all of [VMIL]'s right, title, ownership, interest and
> entitlements in and to the Assigned Claims shall remain the confidential and
> exclusive property of MSP Recovery or its assigns. This assignment is irrevocable
> and absolute.

VMIL Assignment at § 4.1.

17.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired

under the VMIL Assignment to Series 15-09-108, LLC, a designated series of MSPRC ("Series

15-09-108 Assignment"):

> Assignor … irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [Assigned Claims] (and all proceeds and
> products thereof) as such terms are defined in the [VMIL Assignment.]

Series 15-09-108 Assignment at p. 1.

18.    Consideration was given between each party in executing the VMIL Assignment and the Series 15-09-108 Assignment.